## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JIMMY L. BOLINGER,

       *Plaintiff*,

vs.

       Case No. 08-2011-EFM

GRAHAM-ROGERS, INC.,

       *Defendant.*

## MEMORANDUM AND ORDER

This matter comes before the Court on cross motions for summary judgment. Plaintiff Jimmy L. Bolinger filed a motion for summary judgment (Doc. 49) which has been fully briefed and is ripe for decision. Defendant Graham-Rogers, Inc. filed a motion for summary judgment (Doc. 51) which has also been fully briefed and is ripe for decision. For the following reasons, the Court denies Plaintiff's motion and grants Defendant's motion.

**I. Facts**

Plaintiff Jimmy L. Bolinger asserts that Defendant Graham-Rogers, Inc. is liable to him in the amount of $1,000,000 for breach of contract, arising from injuries Plaintiff suffered when he fell through the floor of a townhome he was constructing on May 27, 2004. Plaintiff brings this suit against Defendant as a result of an assignment of claims to Plaintiff by Don Camargo for the alleged breach of contract. Plaintiff was awarded a default judgment of $1,000,000 against Camargo, who originally contracted with Defendant to secure insurance coverage for Camargo's business.

Don Camargo is a contractor who specializes in framing residential construction. In March 2004, Camargo applied for commercial liability insurance, which Defendant placed with the Burlington Insurance Company. Camargo then entered into a premium finance agreement ("PFA") with Defendant, in which Defendant agreed to pay the premium on the insurance policy to Burlington, and in return Camargo agreed to make monthly payments to Defendant. The PFA contains a Power of Attorney clause, which states:

> "I irrevocably appoint Agent or Agent's assignee, as my agent and attorney in fact with full authority in accordance with this agreement to cancel all policies described above without necessity of notice to me, to collect and receive all returned premiums or other sums which result from cancellations, to endorse any check or draft made payable to me under any of the policies, and to sign and deliver on my behalf all documents, forms and notices relating to the policies described above. I agree that a written statement of Agent or Agent's assignees as to authority to cancel or collect shall be sufficient authorization for the Insurer to cancel the policies and to make payments. The power of attorney shall be deemed to be a power coupled with an interest in Agent or Agent's assignee."[1]

Additional pages of the PFA list an Additional Terms and Agreements section which contains a Remedies clause. This clause states "[i]n the event of default, and at any time after that, Agent may, at his option, exercise any and all rights of a secured party as well as other rights and remedies of the Agent including but not limited too . . . [c]ancel all polices listed on the (PFA)."[2]

After obtaining the policy, Camargo presented proof of insurance to TechBuild, Inc., and contracted with them to frame townhomes at Holly Ridge Townhouses in Overland Park, Kansas. Thereafter, Camargo failed to make the monthly installment payment due to Defendant on May 5, 2004. On May 17, 2004, Defendant mailed a Notice of Intent to Cancel to Camargo, notifying him, "[u]nless we receive your past due payment within (10) TEN DAYS after the date of this notice, we

---

[1] Doc. 52-6, p. 2.

[2] Doc. 52-6, p. 3.

will exercise our rights under the terms and conditions of the premium finance agreement executed by you and effect cancellation of your policy."[3] Camargo made no further payments, and Defendant cancelled the policy effective May 27, 2004, at 12:01 a.m.

Plaintiff contracted with Camargo to frame town homes at the Holly Ridge project. At approximately 8 a.m. on May 27, 2004, Plaintiff fell from a ladder while framing a townhome at the project and sustained serious injuries. Plaintiff then sued Camargo for negligence resulting in his injuries and obtained a default judgment against Camargo. After obtaining the judgment, Plaintiff agreed to not pursue the judgment against Camargo in exchange for Camargo assigning any breach of contract claim against the Defendant to the Plaintiff. Both Plaintiff and Defendant have asked the Court for summary judgment in this matter.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[4] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[5] A fact is "material" when "it is essential to the proper disposition of the claim."[6] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[7]

---

[3] Doc. 52-8, p. 2.

[4] Fed. R. Civ. P. 56(c).

[5] *Haynes v. Level 3 Comms., LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Id.*

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[8]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[9]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[10]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[13]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[14]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

---

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[10]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[12]*Adler*, 144 F.3d at 671.

[13]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[14]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.[16] The Court must determine if there are any disputed material facts.[17] Each motion will be treated separately.[18]

## IV. Analysis[19]

Plaintiff asserts that Defendant breached the terms of the PFA when it cancelled the insurance policy effective 12:01 a.m. on May 27, 2004, approximately eight hours before Plaintiff's accident. Plaintiff argues that: (1) the Power of Attorney clause in the PFA granting Defendant such broad discretion to cancel coverage without notice is void against public policy, and (2) sending the Notice of Intent to Cancel modified the PFA so that Defendant's cancellation of the policy on May 27, 2004 was improper. Defendant contends that Plaintiff's claims are meritless, and that its cancellation of the policy was done in accordance with the terms of the PFA, and thus was proper.[20]

"The interpretation of an unambiguous contract is a question of law to be determined by the court and may be decided on summary judgment."[21] The Court notes that 15 Okla. Stat. Ann. § 151 *et seq.* governs the interpretation of contracts, and "[t]he language of a contract is to govern its

---

[16]*City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[17]*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[18]*Id.*

[19]The Court notes that this dispute will be governed by the laws of Oklahoma, pursuant to the Jurisdiction clause of the PFA. "[W]here forum selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Excell, Inc. v. Sterling Boiler & Mechanical, Inc.* 106 F.3d 318, 321 (10th Cir. 1997). The parties also stipulated in the Pre-Trial Order that this dispute would be governed by Oklahoma law (Doc. 46, p. 2).

[20]The Court notes that both parties briefed numerous arguments regarding possible contract defenses. These arguments were considered, but ultimately were not necessary to the resolution of the issue.

[21]*Pub. Serv. Co. of Okla. v. Burlington N. R.R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995).

interpretation, if the language is clear and explicit, and does not involve an absurdity.[22]

## A. Whether the Power of Attorney is Clause Void as Against Public Policy

Plaintiff argues that the Power of Attorney clause of the PFA grants Defendant unfettered discretion to cancel the policy at any time without notice. Such discretion, Plaintiff contends, is against public policy because the insured would have insurance coverage subject to the whims of the finance company and would have no guarantee of coverage on a day to day basis. Oklahoma law states that a contract is void against public policy "if it clearly tends to injure public health, morals or confidence in administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property."[23] This power to declare a contract void against public policy is "a very delicate power, to be exercised only rarely, with caution and restraint, and only in cases that are free from doubt."[24]

While Plaintiff contends that such broad discretion to cancel at any time is against public policy, Defendant counters that Plaintiff has not fully examined the clause. Defendant argues that because the clause includes the terms "in accordance with this agreement,"[25] the power to cancel coverage without notice only arises after the debtor defaults. This contention is backed by Defendant's conduct, as it exercised its power to cancel only after Plaintiff's default. The terms of the PFA state that payment is due by the 5th of each month,[26] and Defendant cancelled the policy, twenty two days after payment was due, on May 27, because of Plaintiff's non-payment. Plaintiff

---

[22] 15 Okla. Stat. Ann § 154.

[23] *Shephard v. Farmers Ins. Co.*, 678 P.2d 250, 251 (Okla. 1983).

[24] *MIF Realty L.P. v. Duncan Develop. Co.*, 892 P.2d 664, 667 (Okla. App. 1995).

[25] Doc. 52-6, p. 2.

[26] Doc. 52-6, p. 1.

was aware of his obligation to pay in a timely manner, as he signed the PFA in early March, and he made his first payment in a timely manner by April 5th.

While, as Plaintiff contends, a Power of Attorney clause that gives Defendant the right to cancel the policy at any time without reason maybe against public policy, those are not the facts here. Defendant exercised the power of attorney clause only after Plaintiff's default, as Defendant contends is its right due to the "in accordance with this agreement" language of the clause. When interpreting a contract, "[c]ourts are bound to give effect to every part of a contract if reasonably practicable."[27] By adopting Defendant's construction of the power of attorney clause which would allow the policy to be cancelled without notice only after default by the debtor, the contract is not contrary to public policy. This construction does not undermine any rights of the debtor, as the power of attorney can only be invoked by the debtors own action or inaction. Since the power to render a contract void should be used "only rarely . . . and only in cases that are free from doubt,"[28] and a reasonable interpretation of the contract does not undermine personal rights, the power of attorney clause of the PFA is not void as against public policy.

Additionally, the Pre-Trial Order provides guidance for the resolution of this issue. A Pre-Trial Order "shall supersede all pleadings and control the subsequent course" of a case,[29] and the parties made stipulations that effect the course of this case. Both parties stipulated that "[i]n the Agreement, Camargo irrevocably appointed Defendant his agent and attorney in fact with full authority to cancel the Burlington Policy without notice to Camargo if Camargo failed to make

---

[27] *Pub. Serv. Co. of Okla.*, 53 F.3d at 1097.

[28] *MIF Realty L.P.*, 892 P.2d at 667.

[29] *See Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002).

timely payments."[30] The parties go on to stipulate that "Camargo failed to make the required monthly payments."[31]

While these stipulations would be rendered void if the Power of Attorney clause was void as against public policy, that is not the case. For the above reasons, the Court has found the Power of Attorney clause was not void as against public policy. Once the Power of Attorney clause is established as enforceable, the stipulation that Defendant could cancel without notice if Camargo failed to make timely payments becomes controlling. Accordingly, because Camargo did not make the required monthly payment, the Power of Attorney clause allowed Defendant to cancel the policy without notice.

Although the parties briefed the issue of whether the power of attorney clause is void against public policy, the validity of that clause is not necessary to the disposition of the issue. There exist alternate grounds upon which a valid cancellation may be based. Additional pages of the PFA list further terms and conditions, among them a Default and Remedies clauses.[32] Defining default, the clause states that "[plaintiff] shall be in default under this agreement upon the happening of any of the following events or conditions: (a) default in the payment or performance of any obligations or promise contained or referred to in this agreement."[33] The Remedies clause states that "[i]n the event of default, and at any time after that, the Agent may . . . [c]ancel all policies listed on (the front of

---

[30] Doc. 46, p. 3.

[31] *Id.*

[32] The Court notes that Plaintiff disputes whether Camargo ever received the additional pages of the PFA, as Defendant cannot produce those additional pages with Camargo's signature. Doc. 57, p. 5. However, Camargo stated in his deposition that he received, read and understood all three pages of the PFA. Doc. 52-4, pp. 31:8 - 32:11. As such, it appears to the Court that it is undisputed that Camargo read the entire PFA.

[33] Doc. 52-6, p. 3.

the PFA)."[34]  As established in *Johnson v. O-Kay Turkeys, Inc.*,[35] "[t]he meaning of a contract is to be ascertained from the writing alone, if possible; the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written."[36]

When Defendant failed to receive payment from Plaintiff by May 5, Plaintiff was in default according to the definition set forth in the PFA.  Plaintiff's default allowed Defendant to exercise the Remedies clause and cancel the policy *at any time* thereafter.  Accordingly, Defendant did not breach its contract with Plaintiff by cancelling the PFA on May 27, 2004, twenty two days after Plaintiff's default.

### B. Effect of Notice of Intent to Cancel on Premium Finance Agreement

Defendant sent Plaintiff a Notice of Intent to Cancel which stated "[u]nless we receive your past due payment within (10) TEN DAYS after the date of this notice, we will exercise our rights under the terms and conditions of the premium finance agreement executed by you and effect cancellation of your policy."[37]  Plaintiff asserts that the Notice of Intent to Cancel served to modify the PFA.  Citing the reasonable expectations doctrine,[38] Plaintiff argues that "if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy."[39]  Plaintiff argues that the Notice of Intent to Cancel modified the PFA, because the ten day period specified in the Notice gave

---

[34]*Id.*

[35]392 P.2d 741 (Okla. 1964).

[36]*Id.* at 743.

[37]Doc. 52-8, p. 2.

[38]*See Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861 (Okla. 1996).

[39]Doc. 64, p. 3 (quoting *Max True Plastering Co.*, 912 P.2d at 864).

9

the Plaintiff the reasonable expectation that coverage would be provided during that stated period.

Traditionally, the reasonable expectations doctrine in Oklahoma has applied only to insurance contracts.[40] In this case, Defendant is not an insurance company, and the PFA is not an insurance policy.[41] Defendant acted as a financier, facilitating the transaction between Plaintiff and the insurance company. Though the reason the PFA was entered into was to secure insurance coverage, this does not change the fact that the agreement Plaintiff contests was for the *financing* of a separate insurance contract and not an insurance contract itself. Because Plaintiff's claim originates from the alleged breach of the PFA, and not of the actual insurance contract, the traditional application of the reasonable expectations doctrine to insurance contracts does not apply here.

Plaintiff contends that the PFA is an adhesion contract to which the reasonable expectations doctrine should apply. Adhesion contracts are "not the result of bargaining between the parties. The services that are the subject of the contract cannot be obtained except by acquiescing to the form agreement."[42] Plaintiff cites *Bilbrey v. Cingular Wireless, L.L.C.*[43] for the proposition that the reasonable expectations doctrine applies to adhesion contracts in general. In *Bilbrey*, while the Court did mention the doctrine in relation to a cell phone contract, it is referenced only once in a brief paragraph, and is not relied upon in the decision.[44] Plaintiff's reliance upon *Bilbrey* is tenuous,

---

[40]*See Max True Plastering Co.*, 912 P.2d at 865.

[41]The Court notes that in the Pre-Trial Order, both parties stipulated to the fact that the purpose of the agreement was the financing of insurance premiums (Doc. 46, p. 2).

[42]*Id.* at 134.

[43]164 P.3d 131 (Okla. 2007).

[44]*Id.* at 135 (deciding the case on the grounds of whether a subsequent arbitration clause was retroactive to previous contracts signed by the plaintiff).

10

as that Court did not apply the reasonable expectations doctrine to the cell phone contract that was the subject of the dispute. Because *Bilbrey* was decided on other grounds, it is uncertain whether the reasonable expectations doctrine would be applied to adhesion contracts outside of the context of insurance in Oklahoma.

Even if the reasonable expectations doctrine applied to adhesion contracts, Plaintiff makes only conclusory statements alleging that the PFA was a contract of adhesion. The only support Plaintiff offers comes from *Max True Plastering Company*,[45] which states that insurance contracts are contracts of adhesion.[46] However, as discussed above, the PFA is not an insurance contract. Plaintiff does not adequately establishes that the PFA is an adhesion contract, making it capable of being interpreted under the reasonable expectations doctrine. Therefore, since Plaintiff has not shown that the PFA was a contract of adhesion, the doctrine of reasonable expectations does not apply to its interpretation.

Furthermore, even if the PFA could be considered an adhesion insurance contract, the reasonable expectations doctrine applies "to situations in which the policy contains an ambiguity or to contracts containing unexpected exclusions arising from technical or obscure language or which are hidden in policy provisions."[47] As stated in *Equity Insurance Company v. City of Jenks*,[48] "[a] contract term is ambiguous if it can be interpreted as having two different meanings."[49] Therefore, to establish that the reasonable expectations doctrine applies in this case, Plaintiff must

---

[45] 912 P.2d at 861.

[46] Doc. 64, p. 4 (quoting *Max True Plastering Co.*, 912 P.2d at 864).

[47] *Max True Plastering Co.*, 912 P.2d at 868.

[48] 184 P.3d 541 (Okla. 2008).

[49] *Id.* at 544.

11

show that the contract was ambiguous or contained unexpected exclusions and that the contract created a reasonable expectation of service in the Plaintiff.[50]

Plaintiff contends that the Notice of Intent to Cancel served to modify the PFA under common law contract principles. However, the language of the document does not support that contention. Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."[51] The reverse side of the PFA contains a clause labeled Entire Agreement which states that "[t]his writing constitutes the entire agreement between the parties to it and may be modified only by a signed writing specifying that it modifies or is in addition to this agreement."[52]

When interpreting a contract, "[c]ourts are bound to give effect to every part of a contract if reasonably practicable."[53] The Notice of Intent to Cancel makes no mention of modifying the PFA, and no consideration passed between the parties upon which grounds for a new contract could be sustained. As stated in *State v. City of Sapulpa*,[54]

> "[w]here an original contract does not contemplate the making of a subsequent supplemental agreement, the original consideration will not support such subsequent agreement, and a subsequent supplemental agreement not forming a part of the original contract or supported by the original consideration thereof, or a new consideration, is void as between the parties"[55]

---

[50]*Max True Plastering Co.*, 912 P.2d at 865.

[51]*Pub. Serv. Co. of Okla.*, 53 F.3d at 1097 (quoting 15 Okla. St. Ann. § 154).

[52]Doc. 52-6, pp. 2-3.

[53]*Pub. Serv. Co. of Okla.*, 53 F.3d at 1097 (*citing Dooley v. Cordes*, 434 P.2d 289, 294 (Okla.1967)).

[54]160 P. 489 (Okla. 1916).

[55]*Id.* at 491.

Accordingly, because the Notice of Intent to Cancel was not mentioned in the PFA, and no new consideration passed between the parties relating to the Notice, the Notice did not modify the terms of the original PFA to include the stated ten day period.

Because the Notice of Intent to Cancel did not modify the terms of the PFA, the PFA is the only document at issue to which the reasonable expectations doctrine could be applied. Plaintiff never explicitly states what portions of the PFA he contends is ambiguous, but he does reference a Late Charges clause in the contract. The clause states that the Plaintiff agrees to pay a fee of $10 if payment is ever late more than ten days.[56] Plaintiff portrays this clause as at odds with the default clause of the PFA which states that Plaintiff will be in default if payment is not received by the 5th of each month. This appears to be the only arguable ambiguity in the contract to which the reasonable expectations doctrine could be applied. The remedies clause, however, states that in the event of default, the Defendant *may* cancel all policies contained within the PFA.[57]

Defendant is not required by the language of the contract to cancel in the event of default, and may do so at its discretion, for instance, if it chooses not to accept late payment. Because the Late Charges clause only provides an alternate route Defendant may take in deciding the disposition of an account, Plaintiff has failed to establish an ambiguity exists in the PFA. Plaintiff fails to establish a genuine issue of material fact that the reasonable expectations doctrine should apply to the Notice of Intent to Cancel, and that any contractual grounds existed upon which the Notice served to modify the PFA.

---

[56]Doc. 52-6, p. 3.

[57]*Id.*

**IT IS ACCORDINGLY ORDERED** this 16th day of July, 2009 that Defendant Graham-Rogers, Inc.'s Motion for Summary Judgment (Doc. 51) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff Jimmy L. Bollinger's Motion for Summary Judgment (Doc. 49) is hereby DENIED.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE